Ollie W. SHIFFLETT, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary, Health, Education & Welfare, Defendant.

Civ. A. No. 70-C-14-C.

United States District Court, W. D. Virginia, Charlottesville Division.

March 27, 1971.

C. Waverly Parker, Stanardsville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This action is brought under section 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision rendered by the hearing examiner on April 17, 1970 denying the plaintiff his claimed disability benefits, became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on June 22, 1970. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and he now petitions the district court for a review of the Secretary's decision. The sole issue before the court in this action is whether the Secretary's final decision denying the plaintiff his requested disability insurance benefits is supported by substantial evidence.

The standard by which the plaintiff's claim has been measured is that contained in section 223 of the Social Security Act, 42 U.S.C.A. § 423. Section

223(d) (1) (A) now provides that the term disability shall be defined as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to * * * last for a continuous period of not less than 12 months.

Section 223(d) (3) further develops the standard of proof required by providing

For the purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

And section 223(d) (2) defines the degree of severity which is required for a claimant to be considered under a "disability" for the purposes of the Act by providing that

An individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

The claimant was born on July 4, 1940 in Greene County, Virginia where he presently resides. He is married and has a young daughter living with his wife and himself. Claimant testified that he quit school when he was sixteen while he was in the sixth grade and that he considers his education the equivalent of a second grade education in that he can neither read nor write for all practical purposes. After leaving school he began working as a peach thinner and then worked on a dairy farm performing odd jobs. After this the claimant was employed as a carpenter's helper, a gas station attendant and as a brick stacker for a brick company. From May 1969 through March 1970 he was employed as a chauffeur at the rate of thirty dollars per week to drive an elderly gentleman to and from therapy sessions in Charlottesville. However, this job terminated when the man for whom he was driving died. Plaintiff has not been employed since his driving job ceased. Since he ceased working, plaintiff indicated that he did some chores around the house, worked in the garden and apparently was able to take care of his personal needs, drive a little and go to church.

Plaintiff dates the onset of his difficulties as being May 8, 1965 when following an episode of drinking he had the sudden onset of severe headaches which he described as all over his head. This was followed by a period of unconsciousness which lasted approximately thirty-five minutes. It is reported that during this time, he could not be aroused and that shaking movements were noted in his right hand and arm which spread to involve the entire body. He apparently had several similar spells in the next several hours and eventually was seen in the University of Virginia Hospital's emergency room. An electroencephalogram was read as being within normal limits and he had a brain scan which showed a suspicious uptake in the right parasagittal region. No other diagnostic studies were made at this time because claimant signed out of the hospital against medical advice.

A year later in April 1966 he was hospitalized for three days from April 26 to April 28 complaining of severe headaches. Routine studies and a brain scan were carried out at this time, but the claimant again signed out of the hospital against medical advice when presented

with the possibility of a carotid arteriogram. The final diagnosis was probable mass lesion, right parasagittal region. The Neurosurgery Clinic of the University of Virginia Hospital has indicated that it will admit the claimant at any time on an emergency basis if he would permit an arteriography.

The plaintiff also presented a report from a Dr. Charles S. Miller, his family physician in Elkton, Virginia. The doctor indicated that he had seen the patient a total of six times from May 12, 1965 through January 25, 1969 while he was suffering from left unilateral headache which was increasingly severe. The doctor's diagnoses were probable intracranial lesion, severe protracted headache and mild essential hypertension.

Plaintiff was also examined by Dr. J. de S. Martinez-G., a board certified neurosurgeon from the Department of Neurological Surgery, University of Virginia School of Medicine. In his report Dr. Martinez reviewed the claimant's medical history and noted that the claimant had been totally incapacitated as far as he, claimant, was concerned. Dr. Martinez recited that plaintiff's last spell was some six months earlier and that there was very little of objective significance upon his examination. There were no abnormal reflexes elicited and the superficial reflexes were perfectly normal. There was no sensory deficit of any type.

Dr. Martinez concluded that from the existing hospital reports the claimant might very well have a parasagittal mass lesion, but that there was very little in the way of objective findings to support this. He suggested further studies which the claimant refuses to submit to. However, Dr. Martinez found that since the claimant had had no spell in over six months, he could see no reason why he could not do some type of work at that time.

The claimant was also examined by Dr. George R. Hanna, who is also a board certified specialist in neurology at the University of Virginia Medical Center. Dr. Hanna reported that the claimant was a young man who appeared to be in good health, that he could find no definite evidence of neurological disease in the claimant, and that whatever had occurred five years previously had apparently not progressed. Dr. Hanna felt that if there were no evidence of progression on newly ordered films, the headaches could be treated symptomatically while the possibility of progression was being watched. Dr. Hanna stated that if this were a benign lesion the patient would have developed some focal neurological deficit by this time. He noted the possibility of a vascular anomaly, but that it had not produced any evidence of a bruit so far.

The plaintiff presented testimony from Dr. George G. Ritchie, a board eligible psychiatrist with thirteen years experience as a general practitioner and three years experience in the practice of psychiatry. Dr. Ritchie also submitted a written report concerning the plaintiff's two visits to his office on March 5 and March 12, 1970. He stated that the claimant was essentially normal and that the claimant was not malingering or that he was suffering from any type of real neurotic disability. He stated that he felt that the claimant was suffering either from some type of aneurism or that there was some type of slow growing tumor in the left hemisphere, but that it was impossible to make a precise diagnosis without an arteriogram. However, Dr. Ritchie testified that he had only done a psychiatric and mental status examination of the claimant without the benefit of any physical examination.

Dr. Ritchie testified that he would not recommend strenuous activity for the claimant and that he found the claimant's refusal to submit to an arteriogram to be a reasonable decision. He stated that the claimant was led to believe that such a procedure would cause his premature death by his particular form of religious training which stressed graphic descriptions of hell.

However, the reasonableness of claimant's refusal to submit to the arteriogram is not the issue in the case. The issue presented is whether or not the plaintiff has met his burden of proof in documenting his disability and whether the Secretary was warranted in concluding that he had not.

There appears to be nothing in the record conclusively supporting the claims of the plaintiff. All of the medical data is framed in terms of possible or at best probable diagnoses. The evidence is overwhelming that an arteriogram is needed for any type of positive diagnosis, a procedure unacceptable to the plaintiff. There has been no progression in his condition in over five years. One doctor sees no reason why the claimant could not do some type of work at this time, one doctor would not recommend strenuous activity and yet another doctor can find no definite evidence of neurological disease in the plaintiff. The vocational witness, Mr. Fulton, from the Virginia Employment Commission, has testified that although employer attitudes may be difficult to surmount, there were jobs in the area which required only light tasks where the claimant would have to do no bending and only two to three pounds of lifting. Furthermore, there is evidence that the claimant is presently employed as a plumber's helper in Charlottesville.

For the foregoing reasons, it is the conclusion of this court that the Secretary's decision denying the plaintiff's claim for Social Security disability benefits is supported by more than substantial evidence. Plaintiff had neither proved his disability by medically acceptable clinical or laboratory diagnostic techniques nor had he shown his inability to engage in any kind of substantial gainful employment existing in the area of his home.

Accordingly, summary judgment should be and hereby is granted to the defendant.